# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MEDCITY REHABILITATION SERVICES, LLC,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

And

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Counter-Plaintiff,

v.

MEDCITY REHABILITATION SERVICES LLC
and DAWIT TEKLEHAIMANOT, D.O.

     Counter-Defendants.

Case No.  11-cv-14777

Hon. Mark A. Goldsmith

---

## FIRST AMENDED COUNTER-COUNTERCLAIMS
## BY DR. DAWIT TEKLEHAIMANOT

Counter-Defendant/Counter-Counter-Plaintiff, Dr. Dawit Teklehaimanot, D.O. ("Dr.

Teklehaimanot"), through his attorneys, Jaffe, Raitt, Heuer & Weiss, P.C., and for his First

Amended Counter-Counterclaims[1] against Defendant/Counter-Plaintiff/Counter-Counter-Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), states as follows:

## NATURE OF THE ACTION

1.      Dr. Teklehaimanot's First Amended Counter-Counterclaims seek recovery of monies owed for Personal Injury Protection Benefits ("PIP") benefits under Michigan's No-Fault Act, MCLA 500.3101 *et seq* (the "No-Fault Act"), for medical services provided to numerous patients ("Patients") injured in automobile accidents and covered by insurance policies issued by State Farm and/or insurance coverage assigned to and administered by State Farm under Michigan's Assigned Claims Facility and/or Michigan's Catastrophic Claims Association.

2.      Dr. Teklehaimanot provided reasonably necessary medical services to the Patients in conjunction with their care, recovery and rehabilitation, and Dr. Teklehaimanot submitted reasonable proof to State Farm of the facts and the charges for medical services.   Although Michigan's No-Fault Act requires insurers to pay for all such reasonably necessary medical services for injuries arising from and/or relating to automobile accidents, State Farm, without just cause, has failed and refused to pay the PIP benefits to Dr. Teklehaimanot.

3.      Among other things, Dr. Teklehaimanot seeks recovery under the No-Fault Act for his reasonable charges for medical services provided to Patients within one (1) year from the date he originally filed his Counter-Counterclaims.  Dr. Teklehaimanot also seeks recovery under the No-Fault Act for his reasonable charges for medical services provided to Patients more than one (1) year from the date he originally filed his Counter-Counterclaims because the "one year back rule" under MCL 500.3145 should be tolled based upon the acts, omissions and/or other misconduct of State Farm.

---

[1] Although Dr. Teklehaimanot is not actually a plaintiff in this case, State Farm filed "Counterclaims" against both MedCity Rehabilitation Services, LLC ("MedCity") and Dr. Teklehaimanot, thereby naming and adding Dr. Teklehaimanot as a Counter-Defendant.

4.      Dr. Teklehaimanot also seeks recovery of his charges for medical services provided to certain Patients based upon promissory estoppel because State Farm expressly agreed to assume responsibility for all bills submitted by Dr. Teklehaimanot regarding particular Patients.

5.      Dr. Teklehaimanot further seeks recovery of his reasonable charges for medical services provided to Patients more than one (1) year from the date that he originally filed his Counter-Counterclaims based upon State Farm's common law fraud, misrepresentations and omissions in conjunction with its claims handling policies, procedures and practices.

6.      Dr. Teklehaimanot seeks to recover his charges for medical services provided to the Patients (identified by State Farm's Claim Numbers) set forth on Exhibit A to Dr. Teklehaimanot's First Amended Counter-Counterclaims.  Dr. Teklehaimanot further seeks to recover his charges for medical services provided to all other Patients not otherwise identified on Exhibit A, but for whom State Farm has failed and refused to remit payments to Dr. Teklehaimanot.

## COUNTER-COUNTERCLAIM PARTIES

7.      Dr. Teklehaimanot is a resident and citizen of the State of Michigan, and is a licensed doctor of osteopathic medicine.

8.      State Farm is an insurance corporation incorporated under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois.  State Farm is licensed and engaged in the business of insurance in the State of Michigan.  State Farm provides automobile insurance to and on behalf of citizens of the State of Michigan and, as such, must comply with Michigan's No-Fault Act.

## JURISDICTION AND VENUE

9.    Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction over the claims asserted herein because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.    Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events, occurrences and/or omissions giving rise to the claims occurred here.

## GENERAL ALLEGATIONS

### I.    Dr. Teklehaimanot's Claims for Medical Services Under the No-Fault Act

11.    State Farm has contractual and statutory obligations to pay reasonable charges for all reasonably necessary products, services and accommodations arising out of injuries sustained as a result of automobile accidents covered by State Farm insurance policies, as well as assigned to and administered by State Farm pursuant to Michigan's Assigned Claim Facility and/or Michigan's Catastrophic Claims Association.

12.    Pursuant to applicable law, Dr. Teklehaimanot provided reasonably necessary medical services to numerous Patients for injuries arising from and/or relating to automobile accidents, including, but not limited to, histories, examinations, testing, diagnoses, treatment and prescriptions for medication, physical therapy and/or other accommodations.

13.    Dr. Teklehaimanot's medical services were reasonably necessary for the care, recovery and/or rehabilitation of the Patients.

14.    Dr. Teklehaimanot submitted reasonable proof to State Farm of the facts and the charges for the various medical services provided to his Patients, and submitted invoices and related documentation to State Farm for his reasonable charges for the various medical services.

15.     Dr. Teklehaimanot has repeatedly demanded payment from State Farm for his medical services.

16.     Despite Dr. Teklehaimanot's submissions and demands, State Farm has failed and refused to pay for his medical services, which constitute allowable expenses under the No-Fault Act.

17.     State Farm's delays, withholdings and/or denials of payments to Dr. Teklehaimanot constitute breaches of State Farm's contractual and statutory duties to promptly pay PIP benefits as required under the No-Fault Act, and subjects State Farm to liability for interest of 12% from the dates of service until payment under the No-Fault Act, MCL 500.3142.

18.     State Farm's delays, withholdings and/or denials of payments to Dr. Teklehaimanot are unreasonable, and subjects State Farm to liability for all attorney fees incurred on behalf of Dr. Teklehaimanot under the No-Fault Act, MCL 500.3148.

## II.     State Farm's Amended Counterclaims

19.     On June 21, 2012, State Farm filed its Amended Counterclaims.  State Farm filed Amended Counterclaims to address its legally deficient RICO claims.

20.     In its Amended Counterclaims, State Farm requests a variety of relief, including, but not limited to, disgorgement of all of the PIP benefits previously paid to Dr. Teklehaimanot and declaratory relief that Dr. Teklehaimanot is not entitled to reimbursement for any unpaid claims.

21.     In support of its claim for disgorgement, State Farm alleges, among other things, that Dr. Teklehaimanot submitted fraudulent bills and related documentation for medical services that allegedly were not performed, improperly performed or performed pursuant to a so-called predetermined protocol.

22.     In accordance with the requirements of No-Fault Act, State Farm reviewed, investigated and paid Dr. Teklehaimanot's claims for medical services.  In each such instance, State Farm conducted a detailed investigation of each claim, including Dr. Teklehaimanot's bills and medical records, prior to approving and paying Dr. Teklehaimanot for his reasonably necessary medical services.  Although State Farm could have declined to pay particular claims, State Farm approved and paid Dr. Teklehaimanot's claims on a case-by-case basis as a result of its independent investigations and determinations.  As a result of its independent due diligence and investigation, and pursuant to its statutory and contractual duties under the No-Fault Act, State Farm conclusively determined that Dr. Teklehaimanot provided reasonably necessary medical services regarding the claims set forth in State Farm's Amended Counterclaims.

23.     Dr. Teklehaimanot reasonably relied upon State Farm's prior approvals and payments for his medical services, as confirmation of the propriety of his medical services, as well as confirmation of the detail contained in his histories, examinations, testing, diagnoses, treatment, prescriptions and billings.  Dr. Teklehaimanot continued to provide reasonably necessary medical services to his Patients in reliance upon State Farm's prior approvals and payments.  Accordingly, State Farm should be estopped from retrospectively contesting any aspect of Dr. Teklehaimanot's bills and medical services set forth in State Farm's Amended Counterclaims and from contesting any aspect of Dr. Teklehaimanot's bills and medical services set forth in Dr. Teklehaimanot's Amended Counter-Counterclaims.

24.     State Farm is now trying to strong-arm Dr. Teklehaimanot to abandon his affirmative claims for unpaid PIP benefits by seeking to recover all of the PIP benefits that it has paid him to date – benefits which State Farm has already determined were reasonably necessary under the No-Fault Act.

**III.**   **State Farm's Express Agreements to Assume Responsibility for Dr. Teklehaimanot's Bills For Medical Services.**

25.    State Farm has expressly agreed to assume responsibility for Dr. Teklehaimanot's

bills for medical services provided to certain Patients (the "Assumed Liability Patients")

Specifically, State Farm has sent Dr. Teklehaimanot letters stating, in pertinent part, that "State

Farm is hereby assuming responsibility for bills submitted by Dr. Teklehaimanot...." regarding the

following Patients (identified by State Farm's Claim Numbers and included in Exhibit A):

> 22-C425-501
> 22-K360-577
> 22-K360-670
> 22-031H-233
> 22-K360-628
> 22-077L-545
> 22-045T-797
> 22-B077-608

In addition to seeking recovery under the No-Fault Act for the reasonably necessary medical

services provided to the above Patients, Dr. Teklehaimanot separately and independently seeks to

recover all charges for medical services pursuant to State Farm's express agreements to assume

responsibility as to all Assumed Liability Patients set forth above, and as otherwise disclosed

during the course of discovery.

26.    In addition to sending letters notifying Dr. Teklehaimanot of its express agreements

as to the Assumed Liability Patients, in separate lawsuits for PIP benefits filed by certain injured

parties (Patients), State Farm has filed motions for summary disposition based upon its express

agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services, including,

but not limited to, the following Assumed Liability Patients:  22-C425-501, 22-K360-577 and 22-

K360-670. Dr. Teklehaimanot is not a party to these or other lawsuits in which State Farm has

filed motions for summary disposition regarding its express agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services.

27.     On or after July 3, 2012, Dr. Teklehaimanot suddenly and unexpectedly received the above referenced motions for summary disposition filed by State Farm in three (3) other PIP lawsuits filed by Patients of Dr. Teklehaimanot.  In each instance, State Farm expressly states that it has agreed to assume responsibility for all bills submitted by Dr. Teklehaimanot.

28.     Dr. Teklehaimanot is a third-party beneficiary of all of State Farm's express agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services provided to all Assumed Liability Patients.  Dr. Teklehaimanot thus seeks to recover against State Farm for all charges for medical services rendered to all Assumed Liability Patients under the doctrines of promissory estoppel and/or judicial estoppel.

29.     Given that State Farm expressly agreed to assume responsibility on behalf of the underlying Assumed Liability Patients for Dr. Teklehaimanot's bills for medical services, State Farm merely stands-in-the-shoes of the Assumed Liability Patients, and thus does not possess any defenses that may otherwise exist for an insurance company under the No-Fault Act.

30.     State Farm's express agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services as to the Assumed Liability Patients provides Dr. Teklehaimanot with separate and independent legal claims against State Farm under the doctrines of promissory estoppel and/or judicial estoppel, and otherwise operate to toll the "one year rule back" under MCL 500.3145.

IV.    **Michigan's No-Fault Act.**

31.    The fundamental purposes of the No-Fault Act are to:  (a) prevent long payment delays, inequitable payments and high legal costs inherent in the tort or fault liability system; and (b) provide victims of motor vehicle accidents with assured, adequate and prompt reparations.

32.    State Farm's acts, omissions and/or other misconduct set forth herein violate the fundamental purposes of the No-Fault Act – namely, to ensure that insurers pay PIP benefits on behalf of accident victims.

33.    The No-Fault Act contains three (3) primary statutory provisions directed toward fulfilling the fundamental purposes of the No-Fault Act:  (a)  MCL 500.3107 provides for an unlimited scope of benefits or "allowable expenses" that are neither restricted by the nature and extent of the injury, the dollar amount or the duration; (b) MCL 500.3142 requires insurers to continuously adjust claims and requires that "insurance benefits are payable as loss accrues" and are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and the amount of losses sustained"; and (c) MCL 500.3157 requires payment of a "reasonable amount for the products, services and accommodations rendered" which "shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance."

V.    **State Farm's Fraudulent Scheme And/Or Other Misconduct To Subvert The Requirements of the No-Fault Act.**

34.    State Farm, and other automobile insurance companies, have embarked upon a deliberate scheme to defeat the "fee for service" system enacted by the Michigan Legislature and codified in the No-Fault Act. State Farm's objective is to replace the "fee for service" system with a "managed care" approach where State Farm's claims adjusters constitute the sole gatekeeper

with the power to restrict and prohibit accident victims' access to "reasonably necessary products, services and accommodations."

35.     As part of this scheme, State Farm's claims adjusters retrospectively seek to substitute their self-interested and profit-motivated opinions for the professional medical judgments of doctors and physical therapists.  As a pretext for delaying, avoiding and/or denying claims, State Farm's claims adjusters retrospectively contest the underlying histories, examinations, testing, diagnoses and treatment provided by doctors, such as Dr. Teklehaimanot.

36.     State Farm's Amended Counterclaim against Dr. Teklehaimanot is replete with allegations that challenge the quality of Dr. Teklehaimanot's medical judgments and medical services.  Nothing in the No-Fault Act, however, permits insurers to avoid payment of "reasonably necessary" medical services based upon the quality of the medical judgments and medical services. The health and welfare of accident victims, and their access to reasonably necessary medical services, does not factor into State Farm's scheme, whereby it treats the accident victims and medical service providers as common enemies.

37.     To advance State Farm's profit-motivated scheme to subvert the purposes of the No-Fault Act, State Farm has systematically failed and refused to pay basic PIP benefits and has routinely filed lawsuits alleging fraud and RICO violations against doctors, physical therapists and other providers – as a mechanism of economic warfare designed to intimidate and destroy providers.  State Farm's Amended Counterclaims against Dr. Teklehaimanot comprises just one part of State Farm's overall fraudulent scheme to subvert its obligations under the No-Fault Act and to intimidate and destroy Dr. Teklehaimanot.

38.     State Farm's claims policies, procedures and practices constitute a fraudulent scheme and/or enterprise, whereby State Farm's course of business in the operation of its claims

handling, administration and adjustment constitutes fraud and deceit. State Farm's fraudulent claims practices have resulted in the improper, wrongful and unlawful delay, avoidance, non-payment and denial of PIP claims submitted by Dr. Teklehaimanot. State Farm employs a wide variety of practices and acts to accomplish and conceal its fraudulent scheme, whereby it wrongfully and unjustly enriches itself by through the non-payment of PIP claims and wrongfully harms service providers and injured parties (Patients) by depriving them of reasonably necessary medical services.

39.     As part of its fraudulent scheme, and as set forth below, State Farm has systematically sent Dr. Teklehaimanot vague, ambiguous, incomplete, inconsistent, inaccurate and false communications regarding his PIP claims. As part of its fraudulent scheme, State Farm also employs a series of pre-determined responses to Dr. Teklehaimont's PIP claims, whereby State Farm further obfuscates and misrepresents the nature, status and rights associated with his PIP claims. State Farm's pre-determined responses are fraudulent because they always result in the delay and/or non-payment of PIP claims, and otherwise constitute mere pretexts for not paying claims. Indeed, rather than actually denying claims, and providing Dr. Teklehaimanot with notice thereof, State Farm systematically, deceptively and falsely advised Dr. Teklehaimanot that his claims were under investigation and that it would advise him as soon as it made determinations regarding particular claims.

**A. State Farm's Extensive Pattern of Misrepresentations and Omissions In Its Written Claims Communications**

40.     State Farm has engaged in an extensive pattern of misrepresentations and omissions and misleading and deceptive statements in its written claims-related communications to Dr. Teklehaimanot and others. State Farm has only expressly denied a handful of claims submitted by Dr. Teklehaimanot; rather, State Farm has embarked upon a systematic pattern of delaying and/or

not paying claims based upon a series of baseless and/or pre-determined pretexts.  Indeed, State Farm has engaged in a deliberate pattern of misrepresentations and omissions as part of its fraudulent claims handling practices, whereby State Farm deliberately obfuscates the nature and status of particular claims.  State Farm's misrepresentations and omissions are designed, in part, to induce inaction on the part of service providers, such as Dr. Teklehaimanot, and are otherwise designed to fraudulently avoid payment of claims and to fraudulently increase the costs upon services providers to obtain basic PIP benefits.

### i.  State Farm's Explanation of Review Forms.

41.     State Farm has sent Dr. Teklehaimanot numerous Explanation of Review ("EOR") forms that contain misrepresentations and omissions and misleading and deceptive statements.

42.     State Farm's EORs contain coded explanations (Reason Codes) for State Farm's non-payment of particular medical services provided by Dr. Teklehaimanot, which are set forth in narrative form under the Explanation section of the EORs.  State Farm's Reason Code SF452, as restated in the Explanation section of the EORs, misrepresents the operative language and the legal standards and requirements of MCL 500.3107.  Exhibit A sets forth the dates of each such EOR sent by State Farm to Dr. Teklehaimanot, and State Farm's underlying EORs specifically identify the State Farm claim representative responsible for generating the particular EORs.

43.     Each and every EOR sent by State Farm to Dr. Teklehaimanot regarding Reason Code SF452 contains the following misrepresentation regarding the operative language and the legal standards and requirements under MCL 500.3107:

> SF452 – The product, service or accommodation was **not reasonable and necessary** for the injured person's care, recovery or rehabilitation as outlined in MCL 500.3107. (Emphasis Added)

44.     The actual statutory language of MCL 500.3107, however, provides that PIP benefits are payable for the following:

> Allowable expenses consisting of all reasonable charges for **reasonably necessary** products, services and accommodations for an injured person's care, recovery, or rehabilitation.

45.     Based upon the plain language of MCL 500.3107, insurers, such as State Farm, are required to pay all reasonable charges for "reasonably necessary" products, services and accommodations. MCL 500.3107 thus sets forth the legal standards and requirements for payment of PIP benefits, and requires insurers to pay for all "reasonably necessary" medical services.

46.     State Farm's EORs misrepresent the governing legal standards and requirements under MCL 500.3107 by falsely stating that Dr. Teklehaimanot's particular medical services were "not reasonable and necessary." The express language of MCL 500.3107 does not require that products, services or accommodations be both "reasonable" and "necessary", and does not require that they be "necessary" in some absolute or objective sense.

47.     The express language of MCL 500.3107 merely requires that medical services be "reasonably necessary" for the injured person's care, recovery or rehabilitation. The actual language of MCL 500.3107 thus provides significant latitude for doctors, such as Dr. Teklehaimanot, to exercise professional medical judgment and discretion with respect to what is "reasonably necessary" and requires insurers to pay for all "reasonably necessary" medical services. The governing legal standard is inherently subjective and liberal, and is otherwise directed toward fulfilling the fundamental purposes of the No-Fault Act – to protect the health and welfare of injured parties.

48.     State Farm has not only misrepresented the actual legal standards and requirements in each and every such EOR sent to Dr. Teklehaimanot, but by implementing and applying such

erroneous legal standards and requirements, State Farm has systematically violated the express requirements of MCL 500.3107 in conjunction with handling and adjusting each and every such claim submitted by Dr. Teklehaimanot. State Farm has thus consistently and systematically applied the wrong legal standards and requirements in its handling of claims submitted by Dr. Teklehaimanot, as evidenced by each and every such EOR submitted by State Farm.

### ii.    State Farm's Other Claims Related Correspondence.

49.    State Farm sent Dr. Teklehaimanot numerous pieces of claims-related correspondence ("Correspondence") regarding the Patients that contain misrepresentations and misleading and deceptive statements. Exhibit A sets forth the dates of each such Correspondence sent by State Farm to Dr. Teklehaimanot, and State Farm's underlying Correspondence specifically identifies the State Farm claim representative responsible for generating the particular Correspondence.

50.    State Farm's Correspondence comprises part of its overall scheme to, among other things, subvert the requirements of the No-Fault Act, and to delay and/or avoid paying required PIP benefits.

51.    State Farm's Correspondence begins by stating either:

a.    "This matter is presently under investigation and as soon as a determination has been made, you will be notified"; or

b.    "Please be advised that State Farm has not yet made a determination of its obligation to pay pursuant to the MI No-Fault Automobile Insurance Statute…This matter is presently under investigation and as soon as a determination has been made you will be notified."

52.    Despite State Farm's express representations and undertakings to notify Dr. Teklehaimanot "as soon as a determination has been made", State Farm has systematically declined or omitted to actually notify Dr. Teklehaimanot as to any such determinations resulting

from its purported investigations.   Rather, as part of its overall fraudulent scheme, State Farm repeatedly and systematically represented to Dr. Teklehaimanot through the Correspondence, and other written claims-related communications, that particular claims were open and pending and under investigation – and that State Farm would notify him of its determinations.   State Farm's promises to inform Dr. Teklehaimanot of its determinations are bad faith and/or false token promises that constitute fraud.   State Farm misrepresented that it would notify Dr. Teklehaimanot as soon as a determination has been made.   State Farm further misrepresented that his claims were under investigation when State Farm had already made a determination not to pay any of Dr. Teklehaimanot's claims.

53.     Immediately following its statements that particular claims were supposedly under investigation, State Farm's Correspondence includes the following bold disclaimer purporting to advise Dr. Teklehaimanot of rights and limitations under the No-Fault Act:

> **Please be aware according to Michigan No-Fault Law, an action for recovery of personal injury protection benefits must be commenced within one year after the most recent allowable expense, work loss, replacement service or survivor's loss has been incurred.   However, the injured party may not recover benefits for any portion of the loss incurred more than one year before the date on which the action was commenced.** (Emphasis in originals)

Each and every such piece of Correspondence sent to Dr. Teklehaimanot by State Farm contains this same bold disclaimer.

54.     State Farm's bold disclaimer to Dr. Teklehaimanot misrepresents and otherwise provides a misleading and deceptive statement of the No-Fault Act.   Although expressly undertaking and purporting to warn Dr. Teklehaimanot of rights and limitations existing under the No-Fault Act, State Farm merely and deceptively states that "**the injured party** may not recover benefits for any portion of the loss incurred more than one year before the date on which the action was commenced."   Although specifically directed to Dr. Teklehaimanot to "[p]lease be aware...",

State Farm's bold disclaimer deceptively advises that statutory limitations merely apply to legal actions by "injured parties." State Farm's bold disclaimer, however, deceptively omits any corresponding reference to statutory limitations upon legal actions by service providers, such as Dr. Teklehaimanot. State Farm's deliberate omission is deceptive and misleading.

55.     The actual statutory language of MCL 500.3145, however, provides, in pertinent part that:

> [T]he claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

MCL 500.3145. Under Michigan law, service providers may bring claims for PIP benefits as "claimants" under MCL 500.3145.

56.     State Farm's incomplete, misleading and/or deceptive bold disclaimers in such Correspondence, as well as the references to ongoing investigations and assurances to provide notifications, were calculated and directed toward inducing service providers, such as Dr. Teklehaimanot, not to take any legal action to recover charges for medical services.

57.     Throughout the same time period that State Farm was misrepresenting and misapplying the governing legal standards and requirements of the No-Fault Act, as set forth in the EORs referenced above, State Farm was simultaneously advising Dr. Teklehaimanot that his claims were under investigation, as set forth in the Correspondence referenced above.

58.     Among other things, State Farm's deliberately misleading and deceptive statements toll the "one year back rule" under MCL 500.3145, and thereby permit Dr. Teklehaimanot to recover under the No-Fault Act for all reasonably necessary medical services provided to his Patients. In addition, State Farm's deliberately misleading and deceptive statements comprise part of State Farm's overall fraudulent scheme and other misconduct that constitutes the factual and

legal basis for Dr. Teklehaimanot's claims against State Farm for common law fraud, misrepresentations and omissions.

### iii. State Farm's Overall Fraudulent Scheme.

59.     In addition to the foregoing misrepresentations and omissions and misleading and deceptive statements in State Farm's EORs and Correspondence, State Farm has engaged in a deliberate and systematic pattern of misconduct regarding the administration, adjustment and handling of claims submitted by Dr. Teklehaimanot.

60.     Although ostensibly processing Dr. Teklehaimanot's claims on a case-by-case basis, State Farm had already made a pre-determined decision not to pay any further claims submitted by Dr. Teklehaimanot.  Based upon the existence of multiple claims submitted by Dr. Teklehaimanot, State Farm referred and/or transferred virtually all claims by Dr. Teklehaimanot to its Multiple Claims Investigatory Unit ("MCIU") and/or its Special Investigatory Unit ("SIU"), which resulted in the non-payment of all claims submitted by Dr. Teklehaimanot.  State Farm, however, declined to inform Dr. Teklehaimanot that the referral and/or transfer of his claims to the MCIU and/or SIU would result in the non-payment of all claims submitted by Dr. Teklehaimanot.

61.     As discussed above, State Farm provided Dr. Teklehaimanot with EORs and Correspondence that constitute nothing more than forms and form letters, whereby State Farm responded with various pre-determined pretexts for delaying payment of Dr. Teklehaimanot's charges for medical services - as a result of the multiple claims submitted by Dr. Teklehaimanot, and not based upon the facts and circumstances regarding the particular Patients.

62.     Although State Farm's Amended Counterclaims purport to allege a RICO conspiracy between Dr. Teklehaimanot and MedCity (and its principal, attorney Carl Collins), State Farm has nonetheless failed to pay claims submitted by Dr. Teklehaimanot regarding Patients

who were neither referred nor represented by Mr. Collins, but, rather were represented by other attorneys. State Farm generated the same form EORs and Correspondence with respect to Patients represented by attorneys other than Mr. Collins, and who are not alleged to be part of the alleged RICO conspiracy set forth in State Farm's Amended Counterclaims. Rather, State Farm has embarked upon a fraudulent scheme and other misconduct to delay and avoid payment of any and all claims submitted by Dr. Teklehaimanot.

63.    As part of its overall scheme to avoid payment of statutorily required PIP benefits to Dr. Teklehaimanot, State Farm deliberately attempted to induce inaction on the part of Dr. Teklehaimanot. Rather than notifying Dr. Teklehaimanot regarding the results of its supposed investigations, or that particular claims were denied, State Farm provided inconsistent and ambiguous communications regarding the status of his claims. Although State Farm had actually made the pre-determined decision not to pay any claims submitted by Dr. Teklehaimanot, State Farm systematically stated that particular claims were under investigation, as if his claims were being processed in good faith and in the ordinary course of business and consistent with the requirements of the No-Fault Act, when in fact they were not.

64.    State Farm has engaged in a deliberate scheme to avoid and/or delay paying for Dr. Teklehaimanot's medical services, as required under its underlying insurance contracts and under the No-Fault Act. Indeed, State Farm's scheme extends far beyond Dr. Teklehaimanot, as State Farm has implemented this calculated scheme against numerous doctors and physical therapists in Southeastern Michigan and throughout the country, including through the use of costly litigation to intimidate providers, such as Dr. Teklehaimanot. State Farm has targeted minority providers as part of its overarching litigation, claims handling and business strategy. Rather than administering, adjusting and processing claims on their own merits and on a case-by-case basis, State Farm has

embarked upon a fraudulent scheme to delay and avoid paying Dr. Teklehaimanot's claims through the misrepresentations set forth in the EORs and the Correspondence and through State Farm's pre-determined pretexts arising from and relating to the multiple claims submitted by Dr. Teklehaimanot.

65.      State Farm is one of the largest automobile insurance companies in the country, and has virtually unlimited financial resources to fund its calculated litigation against Dr. Teklehaimanot and other minority providers.  State Farm has made the business determination that it can further increase profits by delaying, denying and litigating PIP claims – even if it is ultimately ordered to pay PIP benefits, along with statutory interest and attorney fees under the No-Fault Act.

66.      Time after time following blanket denials of coverage, State Farm has nevertheless paid entire claims and/or portions of claims of previously unpaid or denied claims for services – as a result of judicial rulings and/or as a result of mandatory mediation, thereby demonstrating the fraudulent nature of State Farm's prolonged pattern of ambiguous responses, non-payments and/or denials.

67.      Furthermore, as part of its illegal and improper scheme, State Farm has sought to restrain trade by routinely demanding resolutions in settlement agreements preventing health care providers from submitting claims to State Farm, even though the underlying patients require reasonably necessary medical services for their injuries and even though the No-Fault Act requires State Farm to pay for all reasonable charges for reasonably necessary medical services.

68.      State Farm's fraudulent scheme and bad faith application and discharge of its contractual and statutory duties constitute a response to State Farm's unsuccessful attempts to modify the No-Fault Act through legitimate means.  Despite massive advertising and lobbying

campaigns, State Farm has been unsuccessful in attempting to influence legislation to reduce and/or limit an insurer's liability for PIP benefits, including, attempts to impose fee schedules and caps for medical services.

69.     State Farm then began to systematically delay and/or withhold payment of each and every claim submitted by Dr. Teklehaimanot as part of its pre-determined protocol ("State Farm's Pre-Determined Protocol").  State Farm's misconduct harms the injured parties (Patients) and the service providers (such as Dr. Teklehaimanot), and violates the public trust.  State Farm's Pre-Determined Protocol constitutes a deliberate attempt by State Farm to circumvent its express duties and obligations under the No-Fault Act.

70.     As part of its Pre-Determined Protocol, State Farm utilizes the services of so-called independent medical examiners and independent nursing professionals, which State Farm pays to provide form and/or pre-determined conclusions in a cynical and transparent attempt to support its pre-determined and systematic non-payment of Dr. Teklehaimanot's claims.   Indeed, the consulting doctors and nurses paid by State Farm for their analyses, opinions and conclusions comprise a central part of State Farm's overall scheme, and State Farm's consulting doctors and nurses routinely and systematically utilize a pre-determined protocol to find reasons for not paying claims.

71.     Persons injured in automobile accidents in the State of Michigan are entitled to know the business model employed by State Farm, the largest automobile insurance company in this State.  The No-Fault Act entitles such injured persons to select health care providers of their own choice, and to receive the health and welfare provided by the PIP benefits expressly contemplated under the No-Fault Act.  State Farm's fraudulent and illegal scheme violates the letter and the spirit of the No-Fault Act.

72.     By failing to administer and process Dr. Teklehaimanot's claims in good faith, and by utilizing its Pre-Determined Protocol comprised of ambiguous statements, misrepresentations and non-payments, State Farm has wrongfully deprived Dr. Teklehaimanot of reimbursements required under the No-Fault Act, and to which he is entitled.

73.     State Farm initially adjusted and paid Dr. Teklehaimanot's claims on their own merits on case-by-case basis, thereby conclusively determining as a result of its independent due diligence and investigation that the medical services were reasonably necessary under the No-Fault Act.  State Farm's Amended Counterclaims against Dr. Teklehaimanot in this case now seek to disgorge all such prior payments to Dr. Teklehaimanot – despite State Farm's prior independent determinations in each such case.  Significantly, although State Farm charges Dr. Teklehaimanot with fraud and RICO violations, State Farm's Amended Counterclaim is replete with allegations that merely challenge the quality of Dr. Teklehaimanot's medical judgment and adherence to standards of care in conjunction with his histories, examinations, testing, diagnoses and treatment. This demonstrates that State Farm's Amended Counterclaims constitute nothing more than another pretext and another part of its overall fraudulent scheme to avoid paying PIP benefits.  Apparently, State Farm does not like the way Dr. Teklehaimanot practices medicine – because he puts his patients' health and welfare first.

74.     State Farm subsequently embarked on its Pre-Determined Protocol to avoid paying any and all claims submitted by Dr. Teklehaimanot, including the payment and/or reimbursement for any and all reasonably necessary medical services provided by Dr. Teklehaimanot.

75.     As part of State Farm's Pre-Determined Protocol, State Farm issued various communications throughout the claims administration process, which contained false, misleading and/or ambiguous information and statements as to the propriety and the status of particular

charges and claims. State Farm's frequently sent form "investigation" letters, stating the particular claims were under investigation; these types of statements by State Farm were merely pretexts, as State Farm has actually made the pre-determined decision to not to pay any claims submitted by Dr. Teklehaimanot. The purpose of these "investigation" letters was to delay or avoid payment of PIP benefits under the No-Fault Act.

76.     The "one year rule" under MCL 500.3145, which provides, in pertinent part, "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced", should be tolled based upon State Farm's acts, omissions and/or other misconduct.

**COUNT I**
**BREACH OF CONTRACT PURSUANT TO MICHIGAN'S NO-FAULT ACT**

77.     Dr. Teklehaimanot incorporates all paragraphs by reference as through fully set forth herein.

78.     Dr. Teklehaimanot provided reasonably necessary medical services, and submitted reasonable proof to State Farm of the facts and the amounts of the medical services, regarding the patients injured in automobile accidents and otherwise assigned Claim Numbers by State Farm, including, but not limited to, the Patients set forth as Exhibit A.

79.     The Patients referenced in Exhibit A sustained accidental bodily injuries as a result of automobile accidents within the scope of Michigan's No-Fault Act.

80.     The Patients referenced in Exhibit A were assigned Claim Numbers by State Farm pursuant to automobile insurance policies issued by State Farm in accordance with the provisions of Michigan's No-Fault Act, and were otherwise assigned Claim Numbers by State Farm pursuant to its assignment and/or administration of the claims on behalf of Michigan's Assigned Claims Facility and/or Michigan's Catastrophic Claims Association.

81.     The Patients referenced in Exhibit A by name and State Farm Claim Number quality for the payment of PIP benefits by State Farm under Michigan's No-Fault Act.

82.     Upon the accidental injury of the Patients, State Farm became obligated to provide PIP benefit coverage including, but not limited to, payment of all reasonably necessary medical services provided to the Patients for their care, recovery and rehabilitation bills in accordance with State Farm's insurance policies and the applicable provisions of Michigan's No-Fault Act.

83.     State Farm has failed and refused to promptly pay the PIP benefits for the Patients referenced above.

84.     State Farm has unreasonably failed to pay the PIP benefits for the Patients referenced above.

85.     State Farm has violated the implied covenant of good faith and fair dealing through its delays, withholdings and denials of the payment of PIP benefits on behalf of the Patients referenced above.

86.     Dr. Teklehaimanot has sustained significant losses and damages as a result of State Farm's breaches of its contractual and statutory obligations to pay the required PIP benefits.

WHEREFORE, Dr. Teklehaimanot requests this Honorable Court to enter an order compelling State Farm meet its contractual and statutory obligations and awarding Dr. Teklehaimanot damages of an amount commensurate with the full amount of his unpaid invoices, plus statutory interest and attorney fees under Michigan's No-Fault Act, plus exemplary and/or punitive damages against State Farm for its bad faith refusal to pay the required PIP benefits.

## COUNT II
## COMMON LAW FRAUD

87.     Dr. Teklehaimanot incorporates all paragraphs by reference as through fully set forth herein.

88.     State Farm intentionally and knowingly made false and fraudulent statements of material fact to Dr. Teklehaimanot by submitting hundreds of fraudulent EORs, Correspondence and other claims related communications and documentation that contained false representations of material fact.

89.     State Farm knew that the above-described representations and statements contained in the EORs and Correspondence and other claims related communications were false, fraudulent misleading and deceitful when made.

90.     State Farm made the above-described misrepresentations and/or omissions and engaged in the fraudulent scheme and claims handling practices to induce Dr. Teklehaimanot to rely upon the misrepresentations and/or omissions.

91.     As a result of his justifiable reliance upon State Farm's above-described misrepresentations and/or omissions and State Farm's fraudulent scheme and claims handling practices, Dr. Teklehaimanot has sustained significant damages commensurate with the amount of his unpaid claims for medical services provided to the Patients identified in Exhibit A, plus additional unpaid claims identified in the course of discovery.

WHEREFORE, Dr. Teklehaimanot requests this Honorable Court to enter an order awarding him damages of an amount commensurate with the full amount of his unpaid invoices, plus statutory interest and attorney fees, plus exemplary and/or punitive damages against State Farm for its fraudulent withholding, delaying and denying in the handling of Dr. Teklehaimanot's claims and refusing to pay the required PIP benefits.  Dr. Teklehaimanot also requests that this

Court deny the relief sought by State Farm in its Amended Counter-Complaint including, but not limited to, the recovery of any of the PIP benefits that State Farm has already paid to Dr. Teklehaimanot.

<u>COUNT III</u><br><u>PROMISSORY ESTOPPEL</u>

92.     Dr. Teklehaimanot incorporates all paragraphs by reference as through fully set forth herein.

93.     State Farm expressly agreed to assume responsibility for Dr. Teklehaimanot's bills for medical services rendered to the Assumed Liability Patients identified above, as well as other Assumed Liability Patients that may be determined during the course of discovery.

94.     State Farm specifically sent correspondence to Dr. Teklehaimanot regarding its express undertakings and agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services with respect to the following Assumed Liability Patients (identified by State Farm's Claim Numbers and included in Exhibit A):

> 22-C425-501
> 22-K360-577
> 22-K360-670
> 22-031H-233
> 22-K360-628
> 22-077L-545
> 22-045T-797
> 22-B077-608

95.     State Farm also specifically sent Dr. Teklehaimanot copies of motions for summary disposition relating to the following Assumed Liability Patients (22-C425-501; 22-K360-577; and 22-K360-670) in which State Farm seeks dismissal of those PIP lawsuits to the extent that they

seek to recover for Dr. Teklehaimanot's bills for medical services, expressly stating that State Farm has assumed responsibility for Dr. Teklehaimanot's bills for his medical services.

96.     Dr. Teklehaimanot is a third-party beneficiary of State Farm's express agreements to assume responsibility for Dr. Teklehaimanot's bills for medical services provided to the Assumed Liability Patients.

97.     State Farm's promise was clear, definite, and unequivocal.

98.     State Farm's promise was made to induce Dr. Teklehaimanot to act and/or to refrain from acting.

99.     State Farm has failed and refused to pay Dr. Teklehaimanot for his bills for medical services provided to the Assumed Liability Patients.

100.    To avoid injustice, this Court must specifically enforce State Farm's promise to assume responsibility for Dr. Teklehaimanot's bills for medical services.

101.    At the time of making the promises, State Farm could reasonably foresee that its failure to perform pursuant to its promises would cause the damages that Dr. Teklehaimanot has suffered as a result of the non-payment of his bills for medical services provided to the Assumed Liability Patients.

102.    As a direct and proximate result of State Farm's failure to perform, Dr. Teklehaimanot has sustained damages commensurate with the unpaid amounts of his bills for medical services provided to the Assumed Liability Patients.

WHEREFORE, Dr. Teklehaimanot requests this Honorable Court to enter an order awarding him damages of an amount commensurate with the full amount of his unpaid invoices for medical services provided to Assumed Liability Patients, plus pre-judgment interests and any other relief that this Court deems just and proper.

Respectfully submitted,
/s/ Brian Witus
Peter M. Alter (P10145)
Brian Witus (P53062)
*Attorneys for Counter-Defendant*
*Dawit Teklehaimanot, D.O.*
Jaffe, Raitt, Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000

Dated:  July 30, 2012

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MEDCITY REHABILITATION SERVICES, LLC,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Counter-Plaintiff,

v.

MEDCITY REHABILITATION SERVICES LLC
and DAWIT TEKLEHAIMANOT, D.O.

      Counter-Defendants.

Case No.  11-cv-14777

Hon. Mark A. Goldsmith

---

## JURY DEMAND

Dr. Teklehaimanot demands a trial by jury on each and every issue so triable.

      Respectfully submitted,
      /s/ Brian Witus
      Peter M. Alter (P10145)
      Brian Witus (P53062)
      *Attorneys for Counter-Defendant*
      *Dawit Teklehaimanot, D.O.*
      Jaffe, Raitt, Heuer & Weiss, P.C.
      27777 Franklin Road, Suite 2500
      Southfield, MI 48034
      (248) 351-3000

Dated:  July 30, 2012

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MEDCITY REHABILITATION SERVICES, LLC,

       Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

And

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Counter-Plaintiff,

v.

MEDCITY REHABILITATION SERVICES LLC
and DAWIT TEKLEHAIMANOT, D.O.

       Counter-Defendants.

Case No.  11-cv-14777

Hon. Mark A. Goldsmith

---

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

By: /s/ Brian Witus (P53062)
    Peter M. Alter (P10145)
    Brian Witus (P53062)
    *Attorneys for Counter-Defendant*
    *Dawit Teklehaimanot, D.O.*
    Jaffe, Raitt, Heuer & Weiss, P.C.
    27777 Franklin Road, Suite 2500
    Southfield, Michigan 48034-8214
    (248) 351-3000

Dated:  July 30, 2012