UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEDCITY REHABILITATION SERVICES, LLC,

        Plaintiff,                                Case No. 11-cv-14777
                                                        Honorable Gershwin A. Drain
v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,
        Defendant

And

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,
        Counter-Plaintiff,
v.

MEDCITY REHABILITATION SERVICES, LLC,
and DAWIT TEKLEHAIMANOT, D.O.

        Counter-Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART STATE FARM'S MOTION TO DISMISS FIRST AMENDED COUNTER-COUNTERCLAIMS [#64] AND GRANTING STATE FARM'S MOTION TO COMPEL [#42]**

**I.    INTRODUCTION**

On October 28, 2011, Defendant/Counter-Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm"), removed the instant action to this Court. Plaintiff, MedCity Rehabilitation Services, LLC ("MedCity"), filed the instant action seeking reimbursement for physical therapy and medical treatment invoices related to treatment provided to patients insured by State Farm pursuant to Michigan's No Fault Act, MICH. COMP. LAWS § 500.3101 *et seq*.

Thereafter, State Farm filed counterclaims against MedCity and Dawit Teklehaimanot, D.O.,

the doctor who examines, diagnoses and prescribes physical therapy services for most of MedCity's patients, for fraud, racketeering, unjust enrichment and declaratory judgment. On July 30, 2012, Dr. Teklehaimanot filed an Amended Counterclaims against State Farm for breach of contract, common law fraud and promissory estoppel. Presently, before the Court is State Farm's Motion to Dismiss Dr. Teklehaimanot's Amended Counterclaims.

Also before the Court is State Farm's Motion to Compel Interrogatory Responses and Document Production from MedCity, filed on June 26, 2012.[1] After a hearing on December 18, 2012, this Court ordered MedCity to file a response to State Farm's Motion to Compel Interrogatory Responses and Document Production on or before January 22, 2013. See Dkt. No. 111. The Court's Order indicated that "[f]ailure to serve discovery responses by January 22, 2013 will result in the imposition of sanctions against MedCity in the amount of $2,500.00." *Id.* at 3.

Pursuant to E.D. Mich. L.R. 7.1(f)(2), the Court finds that oral argument will not aid in the resolution of these matters. Accordingly, for the reasons that follow, the Court grants in part and denies in part State Farm's Motion to Dismiss Dr. Teklehaimanot's Amended Counterclaims and grants State Farm's Motion to Compel Interrogatory Responses and Document Production.

## II. BACKGROUND

This matter arises out of a dispute between State Farm, Dr. Teklehaimanot and MedCity concerning payment for No Fault benefits. State Farm alleges in its Second Amended Counterclaims that from approximately April of 2010 through the present, MedCity and Dr. Teklehaimanot, acting in concert with attorney Carl Collins, III, have knowingly submitted hundreds

---

[1] This action was reassigned to the undersigned from the Honorable Mark Goldsmith on October 3, 2012.

of fraudulent bills and related documentation to State Farm. State Farm asserts that Dr. Teklehaimanot, pursuant to what State Farm refers to as a "predetermined protocol," examines patients at MedCity and virtually always: (a) diagnoses patients with sprains or strains of the neck and back and other conditions; and (b) prescribes physical therapy at MedCity for as long as possible, whether the patient needs it or not. State Farm maintains that each bill submitted was fraudulent because the services were either not performed or were performed pursuant to a predetermined protocol, resulting in services that were medically unnecessary.

Dr. Teklehaimanot's Amended Counterclaims allege that in May of 2010, State Farm ceased paying bills submitted by MedCity and Dr. Teklehaimanot for physical therapy services performed at MedCity. Prior to May of 2010, State Farm conducted a detailed investigation of each claim and approved and paid Dr. Teklehaimanot's claims on a case-by-case basis. Dr. Teklehaimanot maintains that he reasonably relied on State Farm's prior approvals and payments for his medical services as confirmation of the propriety of his medical services. He further alleges that State Farm expressly agreed to assume responsibility for bills for medical services provided to certain patients, thus he is entitled to recover monies for medical services rendered to these patients under the doctrine of promissory estoppel. Lastly, Dr. Teklehaimanot alleges that State Farm has engaged in a fraudulent scheme to delay, avoid and/or deny payment of PIP claims. Dr. Teklehaimanot claims that State Farm has devised a comprehensive scheme regarding its claims handling practices, whereby State Farm: (1) deliberately misrepresents the status of claims and corresponding legal requirements, standards and limitations; (2) delays the processing and adjustment and payment of claims; and (3) improperly manipulates the litigation process and uses its virtually unlimited financial resources to intimidate and destroy legitimate medical service providers.

### III. LAW & ANALYSIS

#### A. State Farm's Motion to Dismiss Dr. Tekleihamanot's Amended Counterclaims

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining on whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

1. Breach of Contract

State Farm first argues that Dr. Teklehaimanot's breach of contract claim fails to put State Farm on notice of the alleged breaches, namely the specific bills at issue. State Farm maintains that the amended counterclaims identify one hundred and forty-eight (148) unique claim numbers, however a single claim number may contain hundreds of bills for multiple providers and potentially multiple patients. Thus, State Farm asserts that citation to claim numbers only does not fairly apprise State Farm of the bills that are at issue in this matter. This argument is wholly without merit. State Farm's second amended counterclaims likewise merely cite claim numbers without providing patient names. Further, the parties entered into an Agreed Protective Order which was entered by the Court on July 23, 2012. The Protective Order requires the redaction of all patient names. Additionally, the Declaration of Michael Baum, a State Farm Claim Representative, verifies that State Farm has already identified and reviewed all the unpaid claims submitted by Dr. Teklehaimanot. Mr. Baum's Declaration also demonstrates that State Farm has identified

affirmative defenses regarding particular subsets of claims submitted by Dr. Teklehaimanot. *See* State Farm's Mot., Ex. A, ¶¶ 1-3, 5-6, and 7.

State Farm also argues that, to the extent Dr. Teklehaimanot seeks payment for services rendered prior to April 30, 2011, such claims are barred by the No Fault Act's one year back rule.[2] "A plaintiff's ability to claim personal protection insurance benefits, such as those at issue in this case[,] is limited by MCL § 500.3145 in a number of ways." *Buntea v. State Farm*, 467 F. Supp. 2d 749 (E.D. Mich. 2006). First, where no benefits have been paid under a policy, a claimant "must file a lawsuit within one year after the date of the accident causing the injury." *Id*. Where, however, an insurance company has paid benefits under the policy, then a claimant "may still bring a suit more than one year after the injury, except that the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." *Id.*

However, Michigan courts have applied the doctrine of equitable estoppel to toll the one year rule where the insurer's fraud or misrepresentations caused the plaintiff to forbear from filing suit within the one year time period. *See English v. Home Ins. Co.*, 112 Mich. App. 468, 474-75; 316 N.W.2d 463 (1982) (remanding action to the trial court to resolve the plaintiff's argument that the insurer was estopped from raising a statute of limitations defense because it "deliberately induced plaintiff not to commence his action until after the limitations period had run)*; see also Bohlinger v. Detroit Auto. Inter-Insurance Exchange*, 120 Mich. App. 269, ; 327 N.W. 2d 466 (1982). In *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, 270; 562 N.W. 2d 648 (1997), the Michigan

---

[2] State Farm also argues that Dr. Teklehaimanot's request for punitive and/or exemplary damages should be stricken from his breach of contract claim. In his Response, Dr. Teklehaimanot indicates that he concurs that his request for these damages solely in conjunction with his breach of contract claim may be stricken. Accordingly, Dr. Teklehaimanot's request for punitive and/or exemplary damages relative to his breach of contract claim is stricken.

Supreme court recognized that the doctrine of estoppel is applicable where there has been a "false representation or concealment of a material fact" or where there has been "intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action." Further, Dr. Teklehaimanot has alleged sufficient facts in his amended counterclaims supporting the tolling of the statute of limitations, specifically his allegations concerning State Farm's misrepresentations and omissions regarding the status of his claims in the Explanations of Reviews ("EOR") and other correspondence. *See* Dkt. No. 53, ¶¶ 22-23, 38-40, 56-58, 63 and 76. For example, State Farm sent Dr. Teklehaimanot correspondence stating:

> Please be advised that State Farm has not yet made a determination of its obligation to pay pursuant to the MI No-Fault Automobile Insurance Statute . . . This matter is presently under investigation and as soon as a determination has been made you will be notified.

*Id.*, ¶ 51. He further alleges that State Farm "has systematically declined or omitted to actually notify Dr. Teklehaimanot as to any such determinations resulting from its purported investigations." *Id.*, ¶ 52.

State Farm provides no applicable case law in support of its contention that Dr. Teklehaimanot has failed to state a viable breach of contract claim. None of the cases relied on by State Farm involve the No-Fault Act and nonpayment of claims submitted by health care providers. *See McKinney v. Misico Investments, LLC*, No. 11-10467, 2011 WL 5244956 (E.D. Mich. Nov. 3, 2011) (case involving mortgage fraud); *Patrick v. WalMart, Inc*., 681 F.3d 614 (5th Cir. 2012) (claim involved bad faith denial of workers' compensation benefits); *Battah v. Resmae Mortg. Corp*., 746 F. Supp. 2d 869 (E.D. Mich. 2010) (case seeking to set aside foreclosure and primarily alleging violation of the Real Estate Settlement Procedures Act wherein the court concluded that plaintiff's complaint "simply makes conclusory allegations that the interest rates were excessive and

-7-

the Bank Defendants assessed illegal fees, penalties and other charges. Not once in the complaint does Plaintiff present specific numbers to explain what constitutes an excessive rate of or which charges by Defendant were illegal.") Therefore, the Court rejects State Farm's argument and declines to dismiss Dr. Teklehaimanot's breach of contract claim.

2.  Fraud

State Farm next argues that Dr. Teklehaimanot fails to state a claim for fraud because his claim does not allege the false statements, reliance and proximate cause. In order to state a claim for fraud, a plaintiff is required to plead:

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the misrepresentation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages.

*Bennet v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010). Dr. Teklehaimanot counters that his amended counterclaims allege that State Farm's Explanation of Review (EOR) forms and correspondence are deceptive and contain misrepresentations. *See* Dkt. No. 53, ¶¶ 34-76. He further identifies the dates of the misleading EORs and correspondence in exhibit A to his amended counterclaims.

Dr. Teklehaimanot first alleges that the EORs misrepresentations concerning the standard for payment of No-Fault benefits because the EORs state that payment was denied because the services were not "reasonable and necessary for the injured person's care, recovery or rehabilitation as outlined in MCL 500.3107. . . ." *Id.*, ¶42. Specifically, MICH. COMP. LAWS § 500.3107 states that PIP benefits are payable for "allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodation for an injured person's care, recover, or rehabilitation." As an initial matter, State Farm's use of the "reasonable and necessary" standard

-8-

in conjunction with the determination of PIP benefits under MICH. COMP. LAWS § 500.3107 is not inappropriate. Michigan courts routinely describe the applicable standard under the No-Fault Act as "reasonable and necessary." *See Dunn v. Albery*, No. 08-12831, 2009 WL 2168628 (E.D. Mich. July 17, 2009) ("Under Michigan law, 'the question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury.'") Further, the EORs do not purport to represent the language of the No-Fault Act. In any event, even if these statements were false, Dr. Teklehaimanot does not allege that he relied on the denial codes to his detriment. Rather, by his own admission, Dr. Teklehaimanot performed the services for which he now seeks reimbursement, submitted his bills to State Farm, and then received the EORs the alleged misrepresentations. Thus, as a matter of law Dr. Teklehaimanot cannot claim reliance on the EORs which were sent after he already provided his services. Therefore, Dr. Teklehaimanot cannot rely on the EORs reasons for nonpayment of his claims to support his fraud claim.

However, Dr. Teklehaimanot's factual allegations concerning correspondence referencing the one year back rule, as well as correspondence indicating that his claims were currently under investigation are sufficient to state a claim for fraud. For example, Dr. Teklehaimanot relies on correspondence from State Farm informing him that "the injured party may not recover benefits for any portion of the loss incurred more than one year before the date on which the action was commenced." Dr. Teklehaimanot theorizes that State Farm deliberately omitted the fact that the statute of limitations is also applicable to service providers in the hope that Dr. Teklehaimanot would fail to file suit within the applicable limitations period. Dr. Teklehaimanot also alleges that State Farm has engaged in a fraudulent scheme whereby it "systematically sen[ds] Dr. Teklehaimanot vague, ambiguous, incomplete, inconsistent, inaccurate and false communications

regarding his PIP claims." *Id.*, ¶39. Dr. Teklehaimanot further asserts that State Farm's claim handling protocol consists of pre-determined responses that are merely pretext for not paying claims. *Id.*

> Indeed, rather than actually denying claims, and providing Dr. Teklehaimanot with notice thereof, State Farm systematically, deceptively and falsely advised Dr. Teklehaimanot that his claims were under investigation and that it would advise him as soon as it made a determination regarding particular claims.

*Id.* Dr. Teklehaimanot also alleges that State Farm misrepresented that his claims were under investigation "when State Farm had already made a determination not to pay any of Dr. Teklehaimanot's claims." *Id.*,¶52. Lastly, Dr. Teklehaimanot maintains that the false representations "were calculated and directed toward inducing service providers, such as Dr. Teklehaimanot, not to take any legal action to recover charges for medical services." *Id.*, ¶56.

Dr. Teklehaimanot's counterclaims therefore allege the false statements which Dr. Teklehaimanot reasonably relied upon; specifically, the absence of actual denials and the misrepresentations that his claims were under investigation despite State Farm's knowledge that it had already determined that it was not going to pay any of his claims. *Id.*, ¶¶ 60-64. Dr. Teklehaimanot relied on these misrepresentations to his detriment by continuing to provide additional medical services to new and existing patients, as well as by refraining from filing legal actions to recover for his bills. The Court declines to dismiss Dr. Teklehaimanot's fraud claim.

3.  Promissory Estoppel

To state a claim for promissory estoppel, Dr. Teklehaimanot must plead: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise, and (3) that in fact produced reliance of that nature such that the promise must be enforced if injustice is to be avoided. *O'Brien v. BAC Home Loan Servicing*,

No. 10-15136, 2011 WL 1193659 (E.D. Mich. March 28, 2011) (quoting *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686-87 (1999)).

Here, the basis of Dr. Teklehaimanot's claim is that State Farm "expressly agreed to assume responsibility for Dr. Teklehaimanot's bills for medical services provided to certain Patients" when it sent letters to eight patients stating that "State Farm . . . hereby assum[es] responsibility for the bills submitted by Dr. Teklehaimanot." However, Dr. Teklehaimanot's claim omits critical language contained in the letters that State Farm assumes responsibility for the bills to the extent they are "ultimately determined to be owed for the charges at issue." *See* State Farm's Mot. to Dismiss, Exs. 1 and 2. Thus, contrary to Dr. Teklehaimanot's claim, State Farm did not promise to pay Dr. Teklehaimanot's bills for these eight patients, and his promissory estoppel claim is subject to dismissal under Rule 12(b)(6).

   **B.**  **State Farm's Motion to Compel Interrogatory Responses and Document Production from MedCity**

Contrary to this Court's December 19, 2012 Order, MedCity has failed to file a Response to State Farm's Motion to Compel Interrogatory Responses and Document Production by January 22, 2013. Additionally, MedCity failed to comply with this Court's December 19, 2012 Order requiring MedCity to supplement certain discovery responses by January 22, 2013, which it expressly agreed to in the parties' September 4, 2012 Joint Memorandum Regarding State Farm's Motion to Compel Documents and Interrogatory Answers from MedCity. *See* Dkt. No. 68. Rather, MedCity merely served signed answers to State Farm's First Set of Interrogatories, which were identical in substance to the original answers MedCity served on May 15, 2012.

Thus, based on MedCity's failure to comply with this Court's December 19, 2012 Order, the Court sanctions counsel for MedCity in the amount of $2,500.00, which shall be remitted to State

Farm within seven (7) days from the date of this Order. Further, MedCity shall submit complete answers to State Farm's First Set of Interrogatories and produce all responsive documents in MedCity's possession, custody or control that are responsive to State Farm's First Set of Document Requests within seven (7) days from the date of this Order. Failure to comply with this Order may result in further sanctions, up to and including, dismissal of MedCity's claims against State Farm and entry of default judgment against MedCity on State Farm's Second Amended Counterclaims.

## IV.     CONCLUSION

Accordingly, State Farm's Motion to Dismiss First Amended Counterclaims and Jury Demand [#64] is GRANTED IN PART and DENIED IN PART. Dr. Teklehaimanot's promissory estoppel claim is dismissed from this cause of action.

State Farm's Motion to Compel Interrogatory Responses and Document Production from MedCity Rehabilitation Services [#42] is GRANTED.

MedCity's counsel, Craig Romanzi, shall pay $2,500.00 as sanctions to State Farm within seven (7) days from the date of this Order. MedCity shall also serve complete answers and all responsive documents to State Farm's First Set of Interrogatories and Document Requests within seven (7) days from the date of this Order.

SO ORDERED.

Dated: March 29, 2013                               /s/ Gershwin A Drain
                                                    GERSHWIN A. DRAIN
                                                    United States District Judge